**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Annabelle McCombs and Marlene McCombs, as Mother and General Guardian of Anthony McCombs, | |
| *Plaintiffs*, | No. 20 CV 3746 |
| v. | Judge Lindsay C. Jenkins |
| Reliance Standard Life Insurance Co., | |
| *Defendant* | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Annabelle McCombs and Marlene McCombs, as Mother and General Guardian of Anthony McCombs ("Plaintiffs") bring suit against Reliance Standard Life Insurance Company ("Reliance Standard" or "Defendant") under § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132.[1] Plaintiffs seek a declaratory judgment that Annabelle and Anthony are entitled to payment of life insurance benefits under a Reliance Standard group life insurance policy that covered their late father, Jeffrey McCombs. Plaintiffs also seek an order compelling Defendant to pay the full amount of life benefits, reasonable attorney fees and costs pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), and prejudgment interest. Currently before the Court are the parties' cross-motions for summary judgment [Dkts. 12, 20].

---

[1] To avoid confusion, the Court refers to members of the McCombs family by their first names.

For the reasons explained below, the Court grants Plaintiffs' motion [Dkt. 20] and denies Defendant's motion [Dkt. 12]. Plaintiffs are entitled to payment of life insurance benefits in the amount of $130,000, plus attorney fees, costs and prejudgment interest.

## I.    Background

The following facts are taken from the parties' Local Rule 56.1 statements [Dkts. 14, 19, 25] and the administrative record [Dkts. 11 through 11-7] and are undisputed except where a dispute is noted.

Plaintiffs Annabelle and Anthony McCombs are the children of Marlene McCombs. All three have been residents of Illinois at all times relevant to the complaint. Annabelle and Anthony's father, Jeffrey, died in July 2016. At that time, Jeffrey and Marlene were divorced and Annabelle and Anthony were still minors.

At the time of his death, Jeffrey was employed by Transunion, LLC ("Transunion") as a Senior Manager. [Dkt. 19, ¶ 6.] Transunion sponsored and maintained an employee welfare benefit plan for its eligible employees, including Jeffrey. The plan is governed by ERISA. [*Id.*, ¶ 3.] The plan includes life insurance benefits, which were funded by Defendant Reliance, an insurance company licensed to do business in Illinois. [*Id.*, ¶ 4.]

There are at least three documents pertinent to the life insurance benefits offered by Transunion: the life insurance plan, the plan summary, and the policy.[2]

---

[2]    The Seventh Circuit has explained that "confusion" about what is included in an ERISA plan "is all too common in ERISA land," and that "often the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as 'the plan.'" *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 712 (7th Cir. 1999). Where, as here, an ERISA plan includes an insurance

2

The TransUnion LLC Basic Life Insurance Plan (the "Plan") was executed effective December 15, 2005 and identifies TransUnion LLC as the plan administrator. [Dkt. 19, ¶ 30; see also Dkt. 11-6 at 104-17.] Section 5.2 of the Plan [Dkt. 11-6 at 108] provides:

> **5.2    Determination by Plan Administrator or Insurer Binding.**
> The insurer(s) (to the extent benefits are provided under an insurance contract) or the Plan Administrator or its delegate shall have complete discretionary authority to determine the standard of proof required in any case, to determine eligibility for Plan and Plan Program benefits, to apply, construe and interpret the terms of the Plan and Plan Program Documents, to resolve any disputes arising from Plan or Plan Program Document language and to interpret any ambiguous or uncertain terms therein. No benefits shall be paid under the Plan or a Plan Program Document unless the Plan Administrator, it delegate, or any insurer or other third party to whom authority to decide claims has been delegated, has approved them. The decisions of the Plan Administrator, its delegate or any insurer or third party to whom authority to decide claims has been delegated shall be final and binding. To the extent required by law, the Plan Administrator shall administer the Plan on a reasonable and nondiscriminatory basis and shall apply uniform rules to all persons similarly situated. Notwithstanding any provision of the Plan to the contrary, the Plan Administrator's authority shall not extend to any benefits matter with respect to which authority to make claims determinations has been delegated to an administrator, insurer or other third party.

The parties agree that this provision "delegates express discretionary authority to the insurer for benefits provided under an insurance contract." [Dkt. 19, ¶ 30.]

Section 5.4 of the Plan, which Reliance calls the "proof of loss requirement," states:

---

policy, "[w]e sometimes equate the ERISA 'plan' with the insurance policy," but "[m]ore commonly … refer to an insurance policy as a 'plan document' that *implements* the plan." *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 912 (7th Cir. 2013) citing *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 576 F.3d 444, 448 (7th Cir. 2009); *Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 991 (7th Cir. 2005); *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 712 (7th Cir. 1999).

**5.4    Records, Evidence of Loss.** As a condition of receiving benefits payable under the Plan, a Participant, a Participant's representative or a beneficiary may be required to provide the Plan Administrator, its delegate or the insurer with such evidence and records as the Plan Administrator, its delegate or the insurer shall from time to time specify to determine entitlement to benefits under the Plan. To the extent permitted under the Plan Program Documents and applicable law, additional evidence and records may be requested from time to time as reasonably required to determine the Participant's continued eligibility for benefits.

[Dkt. 19, ¶ 31; Dkt. 11-6 at 109.]

Section 9.2 of the Plan further provides:

 **Notice and Proof of Claim.** Unless another such limitations period is provided in an applicable Plan Program Document, written proof covering the occurrence, character and extent of the loss or condition for which claim is made must be filed with the Plan Administrator or its delegate within 12 months after the date the loss or expense is incurred, or the condition occurs, for which the claim is made. Failure to give notice or proof within the time fixed in this Section will not invalidate or reduce any claim if it shall be shown that it was not reasonably possible to furnish such notice or proof on time and that it was furnished as soon as was reasonably possible. In addition, except to the extent a shorter period applies under the applicable Plan Program Document or under any applicable statute of limitations, no legal action may be brought to obtain benefits under the Plan any later than 3 years after the condition occurs or the loss or expense is incurred for which the action is brought."

[Dkt. 11-6 at 111-12.]

The Plan also contains a provision concerning "conflict of terms," which provides that, "[i]n the event of a conflict of terms between an insurance company contract and the Plan (including the Plan Program Documents), the insurance company contract shall govern[.]" [Dkt. 11-6 at 110, § 7.6.]

The Plan includes a Summary Plan Description, which describes group life insurance benefits funded by group insurance policies issued by Reliance. [See Dkt.

19, ¶ 35; Dkt. 11-6 at 100-103.] The Summary Plan Description does not contain the notice and proof of loss deadlines set out in the Plan (as well as the Policy, as explained below). Rather, the Summary Plan Description contains the following language: "How to file a claim: Contact your Plan Administrator when making a claim for benefits under the Plan." [Dkt. 11-6 at 102.]

The life insurance benefits offered under the Plan were provided pursuant to the terms of Group Life Insurance Policy No. GL144794 (the "Policy"). [Dkt. 19, ¶ 1; see also Dkt. 11-1 at 1 *et seq.*] The Policy provides basic life insurance coverage in the amount of "[o]ne (1) times Earnings, rounded to the next higher $1,000, subject to a maximum Amount of Insurance of $250,000." [*Id.*, ¶ 9.] "Earnings" is defined as the "Insured's annual salary received from you on the Policy Anniversary Date just before the date of loss" but does not include "commissions, overtime pay, bonuses or any other special compensation not received as basic salary." [*Id.*, ¶ 10.] The Policy contains the following terms pertinent to this litigation [*Id.*, ¶ 11; Dkt. 11-1 at 22]:

> **NOTICE OF CLAIM:** Written notice must be given to us within thirty-one (31) days after the Loss occurs, or as soon as reasonably possible. The notice should be sent to us at our Administrative Offices or to our authorized agent. The notice should include the Insured's name, the Policy Number and your name. […]

> **PROOF OF LOSS:** For any covered Loss, written proof must be sent to us within ninety (90) days. If it is not reasonably possible to give proof within ninety (90) days, the claim is not affected if the proof is sent as soon as reasonably possible. In any event, proof must be given within 1 year, unless the claimant is legally incapable of doing so.

> **PAYMENT OF CLAIMS:** Payment will be made as soon as proper proof is received. All benefits will be paid to the Insured if living. Any benefits unpaid at the time of death, or due to death, will be paid to the beneficiary. […]

5

**LEGAL ACTION:** No legal action may be brought against us to recover on this Policy within sixty (60) days after written proof of loss has been given as required by this Policy. No action may be brought after three (3) years […] from the time written proof of loss is required to be submitted.

Jeffrey enrolled in TransUnion's Plan in early 2016, designating his children Annabelle and Anthony as his primary beneficiaries in equal parts. [Dkt. 19, ¶ 13.] Jeffrey died on July 29, 2016. [*Id.*, ¶ 14.] At the time of his death, his annual salary—and thus his basic life insurance coverage—was $130,000. [Dkt. 1, ¶ 15.]

The record is unclear concerning exactly what communications Transunion had with Plaintiffs following Jeffrey's death. But at some point, Rebecca Harvey, a Benefits Analyst for Transunion, became involved and reached out to Reliance on behalf of Plaintiffs and their mother. More particularly, on the afternoon of August 1, 2016, Harvey sent the following email to Michelle Orr, Key Client Manager at Reliance [Dkt. 11-2 at 9]:

> Hi Michelle,
>
> Unfortunately, we had another employee pass away last Friday unexpectedly.
>
> His beneficiaries on his life insurance were his two children who are both minors (13 and 15 years).
>
> His ex-spouse is the guardian of the children. From a life claim perspective, what is needed in terms of signing the life benefit claim form if his beneficiaries are minors? Usually the beneficiary would sign the claim form, but since his beneficiaries are kids, I assume their guardian would be the one to sign instead.
>
> Is there a special form that their mother would need to complete since she is not a beneficiary but is the guardian of the beneficiaries?
>
> Thanks for your help!
>
> Rebecca Harvey

6

The parties dispute how this email should be characterized. Plaintiffs describe it as "written notice that Mr. McCombs had died unexpectedly on July 29, 2016," but Reliance denies that the email constitutes "written notice" as required by the Policy. [See Dkt. 25, ¶ 40.]

The next day, August 2, Orr responded to the email, copying Christine Wild ("Wild"), Reliance Standard's Manager for Life/AD&D Claims. [See Dkt. 11-2, at 10.] Orr included Wild on the email so that Wild could "provide ... direction on the minors as beneficiaries and what the process is for us to be able to release a benefit to their guardian and so forth." [*Id.*] Orr requested that Wild "let us know what the next step is." [*Id.*] Wild responded:

> Hi Rebecca,
>
> We extend our condolences to the family of Mr. McCombs in their loss. As guardian of the minor beneficiaries, they may sign the claim form (Part B & C) providing the minor's social security number, date of birth, address, etc.
>
> However, in order for the proceeds to be released, we require a court order appointing the guardian of the minor's estate/property. *If this court order is not received, the proceeds for the minor will be held with Reliance Standard until the minor attains the legal age of majority and requests the proceeds.*
>
> I hope this helps.
>
> Christine Wild, Manager
> Life/AD&D Claims

[Dkt. 11-2 at 10] (emphasis added). There was no further communication between Reliance Standard and Transunion at that time. [See Dkt. 19, ¶ 18.]

Nearly four years later, on March 3, 2020, Harvey sent another email to Reliance concerning Jeffrey's death benefits. Harvey sent the email to

LifeClaimsScan@rsli.com, copying Orr, using the subject line "Life Claim - Jeff McCombs. [Dkt. 11-2, at 4.] The email stated:

> Hello,
>
> On July 29, 2016, we had an associate, Jeff McCombs pass away. His minor children were listed as his beneficiaries.
>
> One of the minor children, Annabelle, is now 18 years old and is filing the claims for the death benefits.
>
> See attached for the signed life claim form for Annabelle along with the copy of the certified death certificate.
>
> Additionally, I had the mother of the other beneficiary, Anthony, sign the life claims form on the minor child's behalf (see attached.)
>
> I also included the supporting documentation for salary and beneficiaries from PeopleSoft which was our HRIS system at the time of Jeff's passing.
>
> Please let me know if you require any additional information and keep me updated on the progress of the claim(s).

On March 5, 2020, Reliance denied the children's claims. The denial letter was from Patrice Wilson, Life Claims Department at Reliance, to Harvey at TransUnion. Wilson informed Harvey that the McCombs' claims were being denied because "the claim was not received in our office until March 4, 2020 more than 3 years after the date of death," which failed to comply with the Group Life Insurance Policy's provisions for "NOTICE OF CLAIM" and "PROOF OF LOSS." [Dkt. 11-1 at 72-73.]

On March 16, 2020, Harvey requested to appeal Reliance's denial of benefits to the McCombs children. She referred to and enclosed a copy of her email correspondence with Orr and Wild at the beginning of August 2016, pointing out that "[t]here was no mention of a timeline" in that correspondence. [Dkt. 11-2 at 11.] She also specifically objected to the two reasons Defendant gave for its denial. First,

8

Harvey asserted that the "Notice of Claim" provision did not bar the McCombs' claims because Reliance received notice on August 1, 2016—just three days after Jeffrey died. Second, Harvey argued that the "Proof of Loss" provision did not bar the children's claims because proof is required within one year "unless the claimant is legally incapable of doing so," and Annabelle was "not able to legally file the life insurance claim since she was a minor child at the time of the passing" and thus "legally incapable of doing so." [*Id.* at 12.]

On March 26, 2020, Reliance responded to Harvey and informed her that it was unable to process her appeal request because she did not have the required "specific relationship ... to the claim." [Dkt. 19, ¶ 22.]

On April 2, 2020, Marlene sent an appeal letter to Reliance, using the same wording as Harvey. [See Dkt. 19, ¶ 23.] Reliance received the appeal the next day, [*id.*, ¶ 24], and denied the appeal on April 7, 2020. The denial letter is signed by Cynthia Pietrowski, Senior Benefits Analyst. Petrowski asserted that the early-August 2016 email exchange "does not contain any directive to delay sending proof of loss. Reference to court order was made with regard to the release of proceeds, once the claim had been processed. The email does advise that the guardian can file on the beneficiaries behalf. Regardless, as indicated above, the policy does indicate that proof of loss must be submitted within one (1) year." [Dkt. 11-6 at 37; see also Dkt. 19, ¶ 36.] The letter also asserts that "while we address and have addressed your appeal here, we have not yet received an appeal request from Ms. Annabelle McCombs." [Dkt. 11-6 at 38.]

Plaintiffs retained counsel. On April 8, 2020, counsel requested a copy of plan documents from Reliance. On April 16, 2020, he requested an extension of time to file an appeal. [Dkt. 19, ¶ 27.] On April 30, 2020, Pietrowski responded that Anthony was not entitled to a second appeal and that it "cannot honor an extension" of time for Annabelle to appeal. [Dkt. 11-6, at 60.] Nonetheless, on May 1, 2020, Plaintiffs' counsel filed an appeal on behalf of Annabelle and Anthony, asserting that Marlene could not submit a valid appeal on behalf of Anthony and that the appeal was timely to the extent it appealed the denial on behalf of Annabelle. [Dkt. 19, ¶ 29.] Counsel also argued that the denial violated Illinois law, 50 Ill. Admin. Code §1405.40(g)(1), and was contrary to the terms of the Policy. [Dkt. 19, ¶ 29.]

In correspondence dated June 10, 2021, Reliance upheld its denial of Plaintiffs' claims. [See Dkt. 11-1 at 83.] Repeating language from its April 7, 2020 denial letter, Reliance stated that it did not provide "any directive to delay sending proof of loss"; rather, "[r]eference was … made to court order with regard to the release of proceeds once the claim had been processed" and "[t]he email advised that the guardian could file on behalf of the beneficiaries." [*Id.* at 84.] Reliance reiterated that proof of loss was not submitted within a year, as required by the Policy. [*Id.*; see also Dkt. 19, ¶¶ 36-37.]

Plaintiffs filed this lawsuit on June 25, 2020. In their single-count complaint, Plaintiffs allege that Reliance's denial of benefits was arbitrary and capricious and amounts to a breach of the contract for insurance. Plaintiffs seek a declaratory judgment pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B), an order

10

compelling Defendant to pay the full amount of life benefits owed under Jeffrey's policy, attorney fees and costs pursuant to ERISA, and prejudgment interest.

## II.   Legal Standards

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). Where, as here, the parties have cross-moved for summary judgment, the Court is required to "'construe all inferences in favor of the party against whom the motion under consideration [was] made.'" *Ten Pas v. Lincoln Nat'l Life Ins. Co.*, 31 F.4th 541, 545 (7th Cir. 2022) (quoting *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005)). The Court "'may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.'" *Johnson v. Rimmer*, 936 F.3d 695, 705 (7th Cir. 2019) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht*

*v. Wis. Dept' of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A party opposing summary judgment must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252.

The parties are in agreement that the ERISA plan at issue grants discretionary authority to the claim administrator—here, Reliance—"triggering deferential review" under ERISA. *Ten Pas*, 31 F.4th at 545; see also *Estate of Jones v. Children's Hospital & Health System Inc. Pension Plan*, 892 F.3d 919, 923 (7th Cir. 2018); *Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667, 672 (7th Cir. 2018). This creates a "high hurdle" for Plaintiffs and requires the Court to uphold the denial of benefits if "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Ten Pas*,

12

31 F.4th at 545. Where policy terms are ambiguous, the Court "defer[s] to an administrator's construction 'if it falls within the range of reasonable interpretations' or if it is 'compatible with the language and the structure of the plan document.'" *Id.* at 546 (quoting *Bator v. Dist. Council 4*, 972 F.3d 924, 929 (7th Cir. 2020)).

"This standard is deferential but 'not a rubber stamp,' and 'we will not uphold a [decision] when there is an absence of reasoning in the record to support it.'" *Hennen v. Metro. Life Ins. Co.*, 904 F.3d 532, 539 (7th Cir. 2018) (quoting *Holmstrom v. Metropolitan Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010)); see also *Ten Pas*, 31 F.3d at 546; *Jones*, 892 F.3d at 923; *Canter v. AT&T Umbrella Benefit Plan No. 3*, 33 F.4th 949, 955 (7th Cir. 2022) ("an administrator must explain its basis for discounting evidence presented by the claimant, even though an administrator is entitled to make a reasoned decision when there is evidence cutting in both directions"). "In conducting this review, we remain cognizant of the conflict of interest that exists when"—as in this case—"the administrator has both the discretionary authority to determine eligibility for benefits and the obligation to pay benefits when due." *Dragus*, 882 F.3d at 673 (quoting *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861 (7th Cir. 2009)); see also *Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 440 (7th Cir. 2019). While the standard of review remains the same, "the conflict of interest is 'weighed as a factor in determining whether there is an abuse of discretion." *Dragus*, 882 F.3d at 673 (quoting *Metro Life Ins. v. Glenn*, 554 U.S. 105, 115 (2008)); see also *Zall v. Standard Insurance Co.*, 58 F.4th 284, 291 n.1 (7th Cir. 2023); *Hennen*, 904 F.3d at 539. "The Supreme Court has directed us

that a conflict of interest should 'act as a tiebreaker when the other factors are closely balanced.'" *Dragus*, 882 F.3d at 673 (quoting *Glenn*, 554 U.S. at 117); see also *Lacko*, 926 F.3d at 440 (providing examples of circumstances that increase or decrease the likelihood that a conflict of interest impacted the determination of benefits).

"Federal common law, which embraces general principles of contract interpretation, governs a plan's interpretation to the extent it is consistent with ERISA." *Jones*, 892 F.3d at 923; see also *Smith v. Bd. of Directors of Triad Manufacturing, Inc.*, 13 F.4th 613, 618 (7th Cir. 2021). Plan language is therefore "given its plain and ordinary meaning, and the plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement." *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012). "[O]rdinary contract rules should be used to flesh out provisions on which ERISA or a plan are silent or ambiguous." *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Haynes*, 966 F.3d 655, 658 (7th Cir. 2020).

The claim administrator's decisions on questions of law—including "legal questions of statutory construction"—are not entitled to deference and will be reviewed de novo. See *Central States, Southeast & Southwest Areas Pension Fund v. Bell Transit Co.*, 821 F. Supp. 1266, 1270 (N.D. Ill. 1993) ("Legal rulings are not discretionary determinations; the Fund does not have the discretion to ignore the statute."); see also *Sellers v. Zurich American Ins. Co.*, 627 F.3d 627, 631 (7th Cir. 2010) ("Where … the denial of benefits determination is based on an interpretation

14

of law, we apply a de novo standard of review."); *Silvernail v. Ameritech Pension Plan*, 439 F.3d 355, 357 (7th Cir. 2006) (same).

## III.  Analysis

Reliance takes the position that it reasonably denied benefits to Annabelle and Anthony McCombs because they failed to provide timely notice of claim and proof of loss, as required by the Policy and the Plan. Plaintiffs challenge that decision as arbitrary and capricious and an abuse of discretion.

### A.  Notice of Claim

 The Policy's "notice of claim" provision states:

> NOTICE OF CLAIM: Written notice must be given to us within thirty-one(31) days after the Loss occurs, or as soon as reasonably possible. The notice should be sent to us at our Administrative Offices or to our authorized agent. The notice should include the Insured's name, the Policy Number and your name.

Plaintiffs say that Harvey's August 1, 2016 email to Reliance's employee Orr met the requirements for notice of claim. It is undisputed that Harvey provided the Insured's name, Jeffrey McCombs, and the policy number and informed Orr that Jeffrey had died, leaving his two minor children as his beneficiaries. Reliance nonetheless argues that the email did not constitute notice of loss, and therefore Plaintiffs forfeited their right to the insurance proceeds, for multiple reasons.

First, Reliance claims that sending an email to Orr wasn't sufficient because Orr "was not … Reliance Standard's authorized agent and Plaintiffs cannot point to anything saying differently." [Dkt. 13 at 11.] This is the entirety of Reliance's argument. Reliance never explains who would qualify as authorized agent under its

interpretation of the notice of claim provision, or why Orr could not satisfy that standard. The Court finds this to be arbitrary and capricious due to its lack of reasoning. See *Aviation West Charters, LLC v. Health and Welfare Plan for Employees of Ajinomoto USA, Inc.*, 425 F. Supp. 3d 1016, 1025 (N.D. Ill. 2019) ("[T]he administrator must weigh the evidence for and against [the denial or termination of benefits], and within reasonable limits, the reasons for rejecting evidence must be articulated if there is to be meaningful appellate review.")

Given the lack of analysis from the plan administrator, the Court looks to the Policy for guidance on who should be considered an authorized agent. The Policy provides that it is to be interpreted pursuant to Illinois law to the extent not preempted by ERISA. [Dkt. 11-6 at 110 (Article 7.5 of the Plan).] Under Illinois law, "[g]enerally, the knowledge and conduct of agents are imputed to their principals." *Pack v. Maslikiewicz*, 144 N.E.3d 37, 63 (Ill. App. 2019). The question of whether an agency relationship exists and the scope of the purported agent's authority are questions of fact. *Id.* Agency can be actual or apparent. "Actual agency consists of a principal/agent, master/servant, or employer/employee relationship and the principal's control or right to control the conduct of the agent, servant, or employee." *McNerney v. Allamuradov*, 84 N.E.3d 437, 453 (1st Dist. 2017); see also *Spitz v. Proven Winners North America, LLC*, 759 F.3d 724, 731-32 (7th 2014); *Wilson v. Edward Hosp.*, 981 N.E.2d 971, 978 (Ill. Sup. Ct. 2012). "Apparent agency liability occurs when a purported principal has created the appearance that someone is his or her agent, and an innocent third party has reasonably relied on such appearance to

his or her detriment." *McNerney*, 84 N.E.3d at 453; see also *Curto v. Illini Manors, Inc.*, 940 N.E.2d 229, 235 (Ill. App. 2010).

Against this backdrop, the Court concludes based on the undisputed facts in the record, Reliance's claim that Orr was not its authorized agent was arbitrary and capricious. All the relevant facts point to a finding of agency: Reliance and Orr have an employer-employee relationship. See *McNerney*, 84 N.E.3d at 453. As its employee, Reliance had a right to control Orr's conduct. *Id.* The record shows Orr was acting within the scope of her employment when providing information to Reliance's customer, Transunion. Orr was answering questions from a policyholder whose covered employee recently died. Orr responded to Harvey's email and put her in contact with Wild, who provided an answer: the guardian of Plaintiffs "may sign the claim form … providing the minor's social security number, date of birth, address, etc." but "in order for the proceeds to be released, we require a court order appointing the guardian of the minor's estate/property" and, "[i]f this court order is not received, the proceeds for the minor will be held with Reliance Standard until the minor attains the legal age of majority and requests the proceeds." All these facts point to the conclusion that Orr was an agent of Reliance when interacting with Harvey or, at the very least, had apparent authority to bind Reliance as the principal. By contrast, there is no evidence pointing *against* a finding of agency. Indeed, even if Orr wasn't Reliance's agent, Reliance doesn't argue that *Wild* was unauthorized, and Wild is the employee who advised Harvey that Reliance would hold the proceeds until the children reached the age of majority.

17

The second reason that Reliance gives for its conclusion that Harvey's email did not constitute notice of loss is that, although the email did "contain[] the Decedent's name and the Group Policy number, it did not provide any information about the beneficiaries." [Dkt. 13 at 11.] But Reliance points to nothing in the policy that requires details about the beneficiaries; the notice of loss provision does not say this. The notice simply must include the insured's name, the Policy Number and "your name." [Dkt. 11-1 at 22.] Harvey, acting as a representative of Transunion, provided her name and contact information; Orr and Wild interacted with her and gave no indication that they viewed her as unauthorized to communicate on Plaintiffs' behalf. Further, Reliance's claim that the email did not have "any information" about the beneficiaries is contrary to the record; Reliance was informed that the beneficiaries were Jeffrey McComb's two children, and that they were both minors.

As a third, "most important[]," reason for finding Harvey's email insufficient to constitute a notice of claim, Reliance argues that the notice was "not given by the Plaintiffs but by the Decedent's employer [Transunion], who is neither authorized to act on behalf of Plaintiffs nor has a specific relationship to the claim." [Dkt. 13 at 11.] There is no support in the record for this conclusion. Reliance cites to paragraph 22 of its Local Rule 56.1 statement, but the communication referred to in that paragraph concerns who is authorized to file an *appeal* of a claim denial, not who is authorized to provide notice of loss. [Dkt. 19 at ¶ 22.] More particularly, in 2020, when Harvey tried to file an appeal, Reliance told Harvey the appeal could only be processed if submitted by certain individuals with a "specific relationship" to the claim: "an

18

individual who has filed a claim for benefits"; "An authorized representative of an individual who has filed a claim for benefits"; "A claimed beneficiary"; and "An executor of an estate." There is nothing in the record to suggest that Reliance ever informed Plaintiffs (who were minors at the time) that the notice of loss had to come directly from them or their right to benefits would be forfeited.

The Court also finds relevant that the Plan Summary does not contain the Notice request and proof of loss deadlines that Reliance relies upon. Federal regulations governing ERISA plans specify that the summary plan description "must accurately reflect the contents of the plans," including specifically the "procedures for filing claim forms" and "applicable time limits." 29 C.F.R. 2520.102-3(s). Here, the Plan Summary states in the "How to File a Claim" section that participants should "Contact your Plan Administrator when making a claim for benefits under the Plan." [Dkt. 11-6 at 102.] That's what Harvey did when she reached out to Orr.

Viewing the administrative record as a whole and in the light most favorable to Reliance (as the Court must do when assessing whether Plaintiffs are entitled to summary judgment), the Court concludes that Reliance's decision to deny benefits based on Plaintiffs' alleged failure to comply with the "Notice of Loss" provision was arbitrary and capricious. Reliance did not provide a "reasoned explanation, based on the evidence," for concluding that Plaintiffs failed to provide timely notice, and its denial is not based on "a reasonable explanation of relevant plan documents." *Ten Pas*, 31 F.4th at 545. Reliance did not focus on the text of the notice of loss provision, it defined key terms without reference to the record and relevant law, and it gave no

19

effect to the Plan Summary. The Court is also "cognizant of the conflict of interest that exists" because Reliance "has both the discretionary authority to determine eligibility for benefits and the obligation to pay benefits when due." *Hennen*, 904 F.3d at 539. As noted, the Court weighs this "as a 'factor in determining whether there is an abuse of discretion.'" *Id.* (quoting *Glenn*, 554 U.S. at 115). Given the deficiencies in the Plan administrator's reasoning and the structural conflict of interest, the Court concludes that Reliance abused its discretion by denying life insurance benefits based on Plaintiffs' purported failure to comply with the Policy's notice of loss provision.

### B.    Proof of Loss

The second reason that Reliance provided for denying Plaintiffs' claim is that Plaintiffs failed to submit proof of loss within 1 year of their father's death. The proof of loss provision of the Policy on which Reliance relies provides:

> **PROOF OF LOSS:** For any covered Loss, written proof must be sent to us within ninety (90) days. If it is not reasonably possible to give proof within ninety (90) days, the claim is not affected if the proof is sent as soon as reasonably possible. In any event, proof must be given within 1 year, *unless the claimant is legally incapable of doing so.* (Emphasis added.)

Plaintiffs take the position that their proof of loss, given in 2020, was timely because they were "legally incapable" of giving notice before they became adults. Plaintiffs point out that under Illinois law—which governs interpretation of the Policy—"it is well-established that a minor lacks legal capacity" and "does not have the legal capacity to initiate, pursue or maintain legal action in her own name." [Dkt. 18 at 12 (citing *Sullivan v. OHIC*, 2014 IL App (1st) 111125, ¶ 122 (2014); *Doe v. Montessori School*, 678 N.E.2d 1082 (Ill. App. 1997); *Stevenson v. Hawthorne Elementary School,*

*East St. Louis School District No. 189*, 579 N.E.2d 852 (Ill. Sup. Ct. 1991)]. And in Illinois, statutes of limitation for minors are all tolled until "2 years after the person attains the age of 18 years" 735 ILCS 5/13-211(a).[3]

Reliance does not address these sources of authority but instead asserts that "[l]egally incapable as referenced in the Group Policy … refers to lacking legal qualification as a result of incapacity," not "a lack of legal capacity as a result of not being of age." [Dkt. 24 at 9, n.1.] Reliance relies solely on Webster's online dictionary's second definition for the term "incapable," which is "lacking legal qualification or power (as by reason of mental incompetence)." https://www.merriam-webster.com/dictionary/incapable (last visited May 31, 2023). This is the only authority Reliance cites, and it does not support Reliance's reading the term "legally incapable" to include legal incapacity *only* by reason of mental disability. The definition Reliance offers is of the term "incapable," not "legal incapacity," which is the term used in the relevant Policy provision. "Mental incompetence" is provided as but one *example* of "incapable," such as one "lacking legal qualification or power." Both minors and persons who are "mentally incompetent" are "lacking legal qualification or power"; that is why the law affords them special, more protective treatment. For instance, minors are routinely referred to as "legally incapable" of certain acts and decisions. See, e.g., *In re Adoption of S.S.*, 657 N.E.2d 935, 941 (Ill. Sup. Ct. 1995) (minors legally incapable of forming intent to establish domicile); *Mount Zion State Bank & Trust v. Consol. Comm'ns, Inc.*, 660 N.E.2d 863, 866-87 (Ill.

---

[3]    Fed R. Civ. Pro. 17(c) also recognizes that both "minors" and "incompetent persons" lack capacity to sue or defend an action.

Sup. Ct. 1995) (six year old legally incapable of exercising due care for his own safety); *Santiago v. Package Machinery Co.*, 260 N.E.2d 89, 93 (Ill. App. 1970) (minor under seven is legally incapable of being contributorily negligent); *People v. Logan*, 2022 IL App (1st) 190021-U, ¶ 31, 2022 WL 4310690, at *5 (Ill. App. 2022) (minor was legally incapable of consent in any sexual context); *People v. Harrison*, 2017 IL App (4th) 170100-U, ¶ 45, 2017 WL 5496037, at *6 (Ill. App. 2017) (minor legally incapable of conveying interest in real property).

Reliance tacitly recognizes that minors are, in fact, "legally incapable" of providing proof of loss by arguing that despite their age, "Plaintiffs could most certainly make a claim for life insurance proceeds *through their mother*, their natural guardian and next of kin, in 2016." [Dkt. 24 at 8 (emphasis added).] But as minors, Plaintiffs did not control their mother's decision not to file proof of claim within one year or her decision not to become a court-appointed guardian. Instead, the children, relied on Wild's direction that if a "court order is not received, the proceeds for the minor will be held with Reliance until the minor attains the legal age of majority and requests the proceeds." [Dkt. 11-2 at 10.] It makes little sense to consider Plaintiffs "legally incapable" of filling out forms themselves, but still "legally capable" of making sure their mother correctly and timely completed and submitted the forms and made the proper decision on whether to become a court-appointed guardian. Reliance's narrow reading of the term "legally incapable" punishes minor children for their parents' choices—as well as the bad advice given to their parents—which is an outcome that is inconsistent with the protective rationale for treating minors as

22

"lacking in legal capacity" in the first place. Given these concerns and the lack of support in the record for Reliance's construction of the Policy, the Court concludes that Reliance's reading of "legally incapable" to exclude legal incapacity due to minority was arbitrary and capricious and an abuse of discretion.

Even if Reliance's reading of the Policy were otherwise reasonable, Plaintiffs have argued convincingly that it would be foreclosed by the Illinois insurance law. The Policy provides that where any section of the Policy "conflicts with the laws of the state in which the Policy is issued," it is "amended to meet the minimum requirements of those laws." [Dkt. 11-1 at 14 (AR 14).] The construction of Illinois insurance regulations is a question of law and therefore Reliance's determination on this issue is not entitled to deference. See *Sellers*, 627 F.3d at 631; *Silvernail*, 439 F.3d at 357. The regulation at issue here, 50 Ill. Admin. Code 1405.40(g), provides:

> Time Limit on Claims
>
> 1) Filing of Death Claims -- There is no time limit for filing death claims if the claim is not conditioned upon other contingencies, i.e., prior disability or accident. Section 224(1)(j) of the Code requires, when there is a claim on a policy due to the death of the insured, settlement shall be made upon receipt of due proof of death. For purposes of this subsection (g)(1), due proof consists of sufficient evidence to establish in a court a prima facie case for payment of the claim. Therefore, any limitation with respect to death claims arising during and contingent upon the insured's continued disability must be limited to a requirement that proof of disability be furnished within a stipulated period as a condition precedent to consideration of a death claim. (Emphasis added.)

Reliance argues that it was free to disregard this provision and require proof of claim within one year because this regulation applies only to *individual* life

insurance policies, not group life policies like the one at issue here. Plaintiffs maintain the regulation applies to both group and individual life insurance policies.

There is no language in paragraph (g) indicating whether it applies only to individual life policies or also to group life policies. The Court is therefore guided by the broader regulatory framework in which section 1405.40(g) is contained. This provision is part of Part 1405 of the Illinois Administrative Code, which "implements Section 143 of the Illinois Insurance Code," 215 ILCS 5/143, "by establishing a 'Policy Form Manual' designed to make uniform the requirements and practices in the filing of certain policy forms with the Director." 50 Ill. Admin. Code. 1405.10. Section 143 is contained in Article IX of the Illinois Insurance Code, which contains "Provisions Applicable to All Companies." Section 143 requires companies providing life insurance to file policies and other documentation with the Director of Insurance; it does not differentiate between individual and group life policies. 215 ILCS 5/143(1); see also 215 ILCS 5/4(a). This overall structure indicates that 1405.40 applies to both group and individual life insurance policies.

A closer reading of section 1405.40 also points to paragraph (g) applying to both individual and group life insurance policies. Paragraph (j) of section 1405.40, which concerns dividend provisions, expressly provides that it "is applicable to individual policy forms." 50 Ill. Admin. Code 1405.40(j). And paragraph (p) applies to "Combination Life and Accident and Health Coverages in Individual Policies." Ill. Admin. Code 1405.40(p). The specific references to individual policies in paragraphs (j) and (p) strongly suggest that, if paragraph (g) applied only to individual policies,

24

it would say so, too. But paragraph (g) provides that "[t]here is no time limit for filing death claims if the claim is not conditioned upon other contingencies, i.e., prior disability or accident" with no reference to individual policies. See, e.g., *Namuwonge v. Kronos, Inc.*, 418 F.Supp.3d 279, 285 (N.D. Ill. 2019) ("Where the legislature uses certain words in one instance and different words in another, it intended different results." (quoting *Dana Tank Container, Inc. v. Human Rights Comm'n*, 687 N.E.2d 102, 104 (Ill. App. 1997))); *People v. Santiago*, 925 N.E.2d 1122 (Ill. Sup. Ct. 2010) (use of "certain language in one instance and wholly different language in another … indicates that different results were intended"). In addition, another provision of Part 1405, which concerns information about preparing policy forms, explains that "[o]n group forms, variable material may be indicated for language that may vary from case to case," such as "benefit provisions and benefit levels." 50 Ill. Admin. Code 1405.20(d). The reference to group forms is yet another indication that group life insurance is not excluded from the coverage of paragraph (g) or § 1405.40 more generally.

In contrast to the regulations concerning insurance forms, the "standard provisions" for individual life insurance, 215 ILCS 5/224, and the "standard provisions" for group life insurance, 215 ILCS 5/231.1, are set out separately in Article XIV of the Insurance Code, "Legal Reserve Life Insurance." The provision governing each type of life insurance (individual or group) specifically states that it is not applicable to the other type. This is more evidence that where legislators and regulators intended for provisions of the insurance laws to apply to only a particular

25

type of life insurance, they know how to say so. See *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 727 (N.D. Ill. 2005) ("Normally, when Congress uses different terms in this manner in the same statute, Congress's choice to employ different terms (at least in the absence of contrary evidence) means that the two terms have different meanings."); *In re Mary Ann P.*, 781 N.E. 2d 237, 247 (Ill. Sup. Ct. 2002).

Reliance argues that § 1405.40(g) must apply only to individual life insurance policies because it references a provision of 215 ILCS 5/224, the "standard provisions" for individual life insurance. The Court does not read the regulation this way. The second through fourth sentences of paragraph (g) explain what constitutes "due proof" of death for purposes of 215 ILCS 224(1)(j)'s requirement that settlement be made upon receipt of due proof of death. The fact that § 1405.40(g) cross-references a statute that applies only to individual policies does not negate the regulation's broad statement that "[t]here is no time limit for filing death claims if the claim is not conditioned upon other contingencies, *i.e.*, prior disability or accident." 50 Ill. Admin. Code 1405.40(g). Absent an indication in § 1405.40(g) that it is limited only to forms for individual life insurance, the Court will not read this limitation into the regulation.

Finally, Reliance argues that even if 50 Ill. Admin. Code 1405.40(g) applied to group policies, it would be preempted by ERISA because it "directly impacts the administration of the benefit plan at issue." [Dkt. 24 at 8.] This argument is both undeveloped and unpersuasive. See *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) ("perfunctory and undeveloped arguments, as well as arguments that are

unsupported by pertinent authority, are waived"). The Supreme Court has "repeatedly held that state laws mandating insurance contract terms are saved from preemption under § 1144(b)(2)(A)." *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 375 (1999) (citing *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 758, (1985); *FMC Corp. v. Holliday,* 498 U.S. 52, 64 (1990); see also *Larson v United Healthcare Ins. Co.*, 723 F.3d 905, 911-13 (7th Cir. 2013). "Section 1144(b)(2)(A) is an exception to ERISA's general preemption rule and provides that 'nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance.'" *Larson*, 723 F.3d at 912 (quoting *Ward*, 526 U.S. at 375). "Accordingly, when an employee-benefits plan includes an insurance policy, contract terms mandated by state insurance law become plan terms." *Id.* (holding that Wisconsin's equal-coverage mandate for chiropractic care is an ERISA plan term and may be enforced in a claim under § 1132(a)(1)(B)).

Thus, in *Ward*, for example, ERISA did not preempt California's "notice-prejudice" rule, which requires an insurer to prove actual prejudice from an insured's failure to provide timely notice in order to deny a claim on that basis. 526 U.S. at 367-77. The Court reasoned that "[b]y allowing a longer period to file than the minimum filing terms mandated by federal law, the notice-prejudice rule complements rather than contradicts ERISA and the regulations." *Id*. at 377. Likewise, in this case, 50 Ill. Admin. Code 1405.40(g) complements ERISA by extending the period to file certain death claims. Confusingly, Reliance argues that even if §1405.40(g) applies and is not preempted by ERISA, it was nonetheless entitled to deny the claim because the "proof

of loss" provision is contained in the Policy and in the Plan, "which is not and never will be subject to 50 Ill. Admin. Code §1405.40(g)(1)." [Dkt. 24 at 8; Dkt. 13 at 15.] Placing the time limitation in the Plan (in addition to the Policy) does not exempt the Plan from the requirements of Illinois law, since "contract terms mandated by state insurance law become plan terms." *Larson*, 723 F.3d at 912; *Ward*, 526 U.S. at 375.

Reliance's decision to deny the benefits claims based on a purported failure to timely comply with the "notice of loss" provision was arbitrary and capricious and an abuse of discretion. There is no support in the administrative record or applicable law for reading "legally incapable" as used in the notice of loss provision to exclude persons who lack legal capacity due to age. Even if there were, Illinois insurance law requirements are Plan requirements. They provide no time limit for filing death claims.

## IV. Conclusion

Plaintiffs' motion for summary judgment [20] is granted and Defendant's motion for summary judgment [12] is denied. Plaintiffs are entitled to payment of life insurance benefits in the amount of $130,000. Plaintiffs' counsel is given until June 29, 2023 to file a request for attorney fees and costs, and prejudgment interest. Defendant shall respond by July 20, 2023, and the reply is due by August 3, 2023.

Enter: 23-cv-3746
Date: June 1, 2023

_____
Lindsay C. Jenkins
United States District Judge